UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
KELCO CONSTRUCTION, INC., d/b/a Belco
Pipe Restoration,

                                        Plaintiff,

                    -against-

SPRAY IN PLACE SOLUTIONS, LLC,
JEFFREY SAUSELE, DAVID BARNETT, and
DTB RGK CONSULTING, LLC CORP.,

                                        Defendants.
-----------------------------------------------------------X

FILED
CLERK

3:05 pm, Sep 18, 2019

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**OPINION & ORDER**
18-CV-5925(SJF)(SIL)

FEUERSTEIN, District Judge:

I.      Introduction

        On October 23, 2018, plaintiff Kelco Construction, Inc., d/b/a Belco Pipe Restoration

("plaintiff" or "Belco") commenced this action against defendants Spray in Place Solutions, LLC

("SIPS"), Jeffrey Sausele ("Sausele"), David Barnett ("Barnett") and DTB RGK Consulting,

LLC Corp. ("DTB") (collectively, "defendants"), asserting claims for unfair competition in

violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the common law; for

racketeering in violation of the civil Racketeer Influenced Corrupt Organizations Act ("RICO"),

18 U.S.C. § 1962(a); and under state law for misappropriation of trade secrets, conversion,

breach of fiduciary duty, defamation, tortious interference with contract, tortious interference

with business relations and tortious interference with prospective economic advantage. Pending

before the Court is defendants' motion to dismiss plaintiff's civil RICO and breach of fiduciary

duty claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state

a claim for relief. For the reasons set forth below, defendants' motion is denied in its entirety.

II.     Background

A.     Factual Allegations[1]

Plaintiff "is a leading provider of spray in place pipe restoration services, which involves using proprietary processes to clean and add a protective coating to piping and, in particular, municipal water pipes." (Complaint ["Compl."], ¶ 10). "Spray in place pipe restoration offers substantial benefits over traditional open-trench excavation and restoration processes, including lower cost and faster return to service." (*Id.*, ¶ 11).

Sausele and Barnett (collectively, the "individual defendants") are plaintiff's former project manager and director of business development[2], respectively, (Compl., ¶¶ 2, 12), "who were tasked with implementing a joint venture with a third-party, Utility Service Co., Inc. ('USCI'), pursuant to a written Memorandum of Understanding ('2016 MOU') related to Plaintiff's proprietary spray in place pipe restoration process." (*Id.*, ¶ 2). Specifically, "[i]n or around 2016, Belco began negotiating a transaction with USCI, and its affiliated 'SUEZ' group of companies, wherein USCI would become the exclusive entity through which Belco would bid for and negotiate municipal contracts for pipe restoration throughout the United States (except for New York, New Jersey, and Connecticut), and Belco would become USCI's exclusive supplier and/or subcontractor for spray in place pipe restoration." (*Id.*, ¶ 17). The individual defendants "were directly involved with Belco's negotiations with USCI." (*Id.*, ¶ 18).

On or about September 27, 2016, USCI and Barnett, on behalf of Belco, in his capacity as Belco's "Director of Business Development," executed the 2016 MOU, "memorializing their

---

[1] The factual allegations in the complaint are assumed to be true for purposes of this motion and do not constitute findings of fact by the Court.

[2] Later in the complaint, plaintiff alleges that Barnett "and/or his business entity, DTB . . . was formerly an independent contractor hired by Belco as its director of business development." (Compl., ¶ 15). As used herein, the term "individual defendants" includes DTB.

arrangement for a period of at least one year, continuing through at least September 27, 2017." (Compl., ¶¶ 20-21).

Plaintiff alleges that the individual defendants, through their employment and/or relationship with it, "had access to trade secrets and other confidential and proprietary information." (Compl., ¶¶ 13, 16). With respect to Barnett, such information allegedly includes, but is not limited to, "technical know-how, direct access to USCI, customer lists, prospective customer lists, business development strategies, business negotiations, business operations, supplier information, bidding and pricing strategies, and details regarding Belco's spray in place pipe restoration process." (*Id.*, ¶ 16). With respect to Sausele, such information allegedly includes, but is not limited to, "the materials, processes and techniques used in the spray in place pipe restoration process." (*Id.*, ¶¶ 13). In addition, plaintiff provided Sausele "with extensive training, including, among other things, all technical and operational aspects of the spray in place restoration process; equipment operation, maintenance and calibration; the identity and operation of software programs utilized in the process; material supplier information; customer information; and pricing information." (*Id.*, ¶¶ 14).

In or around February 2017, Sausele terminated his employment, and Barnett terminated his and/or DTB's business relationship, with plaintiff. (Compl., ¶¶ 22-23). According to plaintiff, the individual defendants "started a competing company[;] claimed to have acquired Plaintiff[;] [and] misappropriated Plaintiff's tools, equipment, trade secrets, proprietary processes, client and supplier information, pricing information[,] website content, and marketing material – in effect masquerading as Plaintiff – so as to reap the benefits of the joint venture for themselves." (*Id.*, ¶ 2). Specifically, plaintiff alleges that the individual defendants: (i) "misappropriated approximately $150,000 in tools and equipment from Plaintiff" in February 2017, (*id.*, ¶ 24); (ii)

purchased the domain name "sprayinplace.com" on March 5, 2017 and then "substantially copied . . . Belco's website in all material respects to their sprayinplace.com domain, except to replace Belco's name, logo, and contact information with their own[,] . . . [even] claiming that Belco's projects . . . were performed by SIPS," (*id.*, ¶¶ 26-28); and (iii) formed SIPS by filing articles of organization with the State of Florida on March 7, 2017, (*id.*, ¶ 30), and then "filed a certificate with the New York Department of State as a foreign business entity doing business in the State of New York" on or about June 21, 2017. (*Id.*, ¶ 32).

Plaintiff further alleges, *inter alia*, that defendants (i) "have obtained numerous municipal and other contracts, through USCI and otherwise, through intentional, deceptive and knowing misrepresentations," including that they acquired Belco, that they were the successor to Belco's rights under the 2016 MOU, that Belco no longer existed or operated as an independent entity, that they were the only contractor in North America that provides spray in place pipe restoration, and that they hold a patent for the spray in place pipe restoration process, (Compl., ¶ 33; *see also id.*, ¶ 35-36, 39-40, 55); and (ii) gave a presentation at the Wisconsin Rural Water Association ("WRWA") in or around August 2017, during which they "misappropriated and copied Belco's marketing and sales presentations[,] . . . falsely claim[ed] that Belco's proprietary processes, know-how, labors, skill, expenditures, and/or good will belonged to [them,] . . . masqueraded as Belco and/or the successor-in-interest to Belco's business[,] . . . utilized photographs from Belco's prior projects and falsely claimed that said photographs were examples of their own work[,] . . . [and] falsely claimed to have seventeen [17] years of experience with spray in place pipe restoration, misrepresenting Belco and its affiliates' prior experience and history as their own." (*Id.*, ¶¶ 42-46).

In addition, plaintiff alleges, "[u]pon information and belief," (i) that "in or around early 2017, Defendants falsely claimed to USCI that they had acquired Belco[,]" (Compl., ¶ 25); (ii) that defendants "have copied text and diagrams from Belco's promotional literature and used said material for promotional purposes," (*id.*, ¶ 29); (iii) that defendants "have given various presentations at trade and industry events," during which they allegedly made similar misrepresentations to those they allegedly made during the WRWA presentation, (*id.*, ¶ 47); and (iv) that defendants "importuned Warren Environmental to cease supplying products to Plaintiff" by providing it with "financial incentives" to do so. (*Id.*, ¶¶ 49-50). According to plaintiff, Warren Environmental, Inc. ceased supplying products to it in or around April 2018, (*id.*, ¶ 51); and defendants obtained at least two (2) contracts, totaling approximately one million three hundred ninety-nine thousand dollars ($1,399,000.00), "by fraudulently claiming entitlement to [its] rights under the 2016 MOU with USCI." (*Id.*, ¶ 2; *see also Id.*, ¶¶ 34-41).

Moreover, plaintiff alleges that on December 14, 2017, Barnett published a promotional video on YouTube and www.sprayinplace.com that "substantially duplicates, with only minor changes, a promotional video that Plaintiff and/or one of its affiliates developed and published on or about June 18, 2012." (Compl., ¶ 48).

B.    Procedural History

On October 23, 2018, plaintiff commenced this action against defendants, asserting claims for unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the common law (first and third causes of action, respectively); for civil RICO violations under 18 U.S.C. § 1962(a) (second cause of action); and under state law for misappropriation of trade secrets, conversion, breach of fiduciary duty, defamation, tortious

interference with contract, tortious interference with business relations and tortious interference with prospective economic advantage (fourth through tenth causes of action, respectively).

Defendants now move to dismiss plaintiff's civil RICO and breach of fiduciary duty claims (second and sixth causes of action, respectively) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.

III.    Discussion

A.    Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a party plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-- but it has not 'show[n]'-- 'that the pleader is entitled to relief.'" *Id.* at 679, 129 S. Ct. 1937 (brackets in original) (quoting Fed. R. Civ. P. 8(a)(2)). "Determining whether a [pleading] states a plausible claim for relief will[] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550

U.S. at 555, 127 S. Ct. 1955). "Nor does a [pleading] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the [pleading] are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56, 127 S. Ct. 1955 (citations omitted).

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the pleader. *See Kim v. Kimm*, 884 F.3d 98, 102-03 (2d Cir. 2018); *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "While legal conclusions can provide the framework of a [pleading], they must be supported by factual allegations." *Id.* at 679, 129 S. Ct. 1937. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*; *see also Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

Nonetheless, a party is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010); *accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 729-30 (2d Cir. 2013). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the pleading, which are accepted as true; to any documents attached to the pleading as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the pleading "relies heavily" and which are, thus, rendered "integral" thereto. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016).

B.    Civil RICO Claim

With respect to its civil RICO claim against defendants, plaintiff alleges, *inter alia*, (i) that "SIPS is an enterprise engaged in or affecting interstate commerce," (Compl., ¶ 60); (ii) that the individual defendants "engaged in a pattern of racketeering activity, including at least two or more violations of 18 U.S.C. § 1832 [theft of trade secrets] by, with intent to convert a trade secret related to a product or service used in interstate or foreign commerce, and intending or knowing that the offense will injure any owner of that trade secret, knowingly stole or misappropriated a trade secret, and/or without authorization copied, duplicated, downloaded, uploaded, or otherwise replicated, trade secret information," (*id.*, ¶ 61), and, specifically, "misappropriated" plaintiff's proprietary processes, customer information and vendor information; "misappropriated and/or converted Plaintiff's joint venture arrangement with USCI;" and, "[u]pon information and belief, copied documents and information related to Plaintiff's proprietary processes," (*id.*, ¶ 62); (iii) that, "[u]pon information and belief, in violation [of] 18 U.S.C. § 1341 [mail fraud], Defendants . . . transmitted documents and things in connection [sic] through the U.S. Postal Service and/or one or more private commercial

interstate carriers or parcel service(s) in furtherance of their fraudulent schemes described herein," (*id.*, ¶ 63); (iv) that, "[u]pon information and belief, in violation of 18 U.S.C. § 1343 [wire fraud], Defendants . . . transmitted writings, signs, signals, pictures or sounds by means of wire, including but not limited to telephone, email, and/or facsimile, in furtherance of their fraudulent schemes described herein," (*id.*, ¶ 64); (v) that the individual defendants "utilized income derived from the aforementioned pattern of racketeering activity to acquire, establish, and or [sic] operate SIPS," (*id.*, ¶ 65); and (vi) that plaintiff has been damaged "[a]s a direct and proximate result of Defendants' racketeering activity." (*Id.*, ¶ 66). Plaintiff seeks treble damages, costs and attorney's fees pursuant to 18 U.S.C. § 1964(c), (*id.*, ¶ 68 and "Wherefore" clause), as well as statutory damages, (*id.*, "Wherefore" clause), and injunctive relief pursuant to 18 U.S.C. § 1964(a), including, *inter alia*, "ordering defendants to divest themselves of any interest, direct or indirect, in SIPS; imposing reasonable restrictions on Defendants' future activities or investments[;] . . . or ordering dissolution or reorganization of SIPS," (*id.*, ¶ 67); and/or prohibiting defendants from "continuing to engage in the business of spray in place pipe restoration." (*Id.*, "Wherefore" clause).

"Among its civil remedies, RICO provides a private right of action for treble damages for a 'person injured in his business or property by reason of a violation of section 1962.'" *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 321 (2d Cir. 2011) (quoting 18 U.S.C. § 1964(c)). A "person" is defined in the statute to "include[] any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3).

"In order to bring suit under § 1964(c), a plaintiff must plead (1) the defendant's violation of 18 U.S.C § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir.

2006) (quotations, alterations and citation omitted). A plaintiff asserting a civil RICO claim "has

two (2) pleading burdens. First, he must allege that the defendant has violated the substantive

RICO statute, 18 U.S.C. § 1962 [], commonly known as 'criminal RICO.'" *Moss v. Morgan*

*Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). "Plaintiff must allege adequately defendant's

violation of section 1962 before turning to the second burden," which requires the plaintiff to

"allege that he was 'injured in his business or property *by reason of* a violation of section 1962.'"

*Id.* (emphasis in original) (quoting 18 U.S.C. § 1964(c)). "RICO's use of the clause 'by reason

of' has been held to limit standing to those plaintiffs who allege that the asserted RICO violation

was the legal, or proximate, cause of their injury, as well as a logical, or 'but for,' cause."

*Lerner*, 459 F.3d at 283-84; *see also Anza v. Ideal Steel Supply Corp*, 547 U.S. 451, 462, 126 S.

Ct. 1991, 164 L. Ed. 2d 720 (2006) ("[A] claim is cognizable under § 1964(c) only if the

defendant's alleged violation proximately caused the plaintiff's injury.") "The proximate-cause

inquiry . . . requires careful consideration of the relation between the injury asserted and the

injurious conduct alleged." *Anza*, 547 U.S. at 462, 126 S. Ct. 1991 (quotations and citation

omitted).


      1.   Substantive RICO Violation

     Although defendants contend that the "complaint alleges a violation of section 1962(c),"

(Defendant's Memorandum of Law in Support of Motion to Dismiss ["Def. Mem."] at 3), the

complaint actually asserts the RICO claim under 18 U.S.C. § 1962(a), which provides, in

relevant part:

> "It shall be unlawful for any person who has received any income derived, directly
> or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or
> indirectly, any part of such income, or the proceeds of such income, in acquisition

of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . ."

18 U.S.C. § 1962(a). Thus, in order to state a claim under that section, a plaintiff must allege: (1) that the defendant (2) directly or indirectly received income (3) from two or more acts constituting a "pattern" (4) of "racketeering activity"; and (5) directly or indirectly used or invested any part of such racketeering income, or the proceeds thereof, to acquire an interest in, or to establish or operate (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce ("commerce-affecting enterprise"). *See 4 K&D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 543 (S.D.N.Y. 2014) ("To state a claim under § 1962(a), a plaintiff must allege '(1) that the defendants used or invested racketeering income to acquire or maintain an interest in the alleged enterprise; and (2) that the plaintiffs suffered injury as a result of that investment by the defendants.'" (quoting *R.C.M. Exec. Gallery Corp. v. Rols Capital Co.*, 901 F. Supp. 630, 642 (S.D.N.Y. 1995))); *McCaffrey v. County of Nassau*, No. 11-cv-1668, 2013 WL 2322879, at * 7 (E.D.N.Y, May 25, 2013) ("[A] violation of § 1962(a) consists of investing income derived from a pattern of racketeering activity to acquire an interest in, establish, or operate an enterprise; the violation is not established by mere participation in predicate acts of racketeering. Accordingly, under the plain terms of the statute, to state a civil claim under § 1964(c) for a violation of § 1962(a), a plaintiff must allege injury 'by reason of defendants' investment of racketeering income in an enterprise." (quotations and citation omitted)). Thus, like claims under Section 1962(c), civil RICO claims under Section 1962(a) require a plaintiff to allege, *inter alia*, a "pattern of racketeering activity" and an "enterprise."

a. Pattern of Racketeering Activity

The term "racketeering activity" means "any act which is indictable" for the crimes enumerated under 18 U.S.C. § 1961(1)(B), including, as relevant here, mail fraud in violation of 18 U.S.C. § 1341; wire fraud in violation of 18 U.S.C. § 1343; and theft of trade secrets in violation of 18 U.S.C. § 1832.

The statute broadly defines the term "pattern of racketeering activity" to "require[] at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). "[T]he statement that a pattern 'requires at least' two predicates implies that while two acts are necessary, they may not be sufficient." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989) (quotations and citation omitted). "Section 1961(5) concerns only the minimum *number* of predicates necessary to establish a pattern; and it assumes that there is something to a RICO pattern *beyond* simply the number of predicate acts involved." *Id.* (emphasis in original). "[T]he term 'pattern' itself requires the showing of a relationship between the predicates, . . . and of the threat of continuing activity. . . . It is this factor of continuity plus relationship which combines to produce a pattern." *Id.* at 239, 109 S. Ct. 2893 (quotations and citations omitted); *see also Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 282, 199 L. Ed. 2d 127 (2017) ("The Supreme Court has interpreted th[e] phrase ['pattern of racketeering activity'] to require both that the RICO predicates pose a threat of continuous criminal activity and that they be related to each other.")

The element of relatedness requires a showing that the predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are

interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240, 109 S. Ct. 2893 (quoting subsection (e) of Title X of the former Organized Crime Control Act of 1970, 18 U.S.C. § 3575(e), and finding "no reason to suppose that Congress had in mind for RICO's pattern of racketeering component any more constrained a notion of the relationships between predicates that would suffice.")  With respect to the element of continuity, "[w]hether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case." *H.J. Inc.*, 492 U.S. at 242, 109 S. Ct. 2893.

Defendants challenge only the sufficiency of plaintiff's allegations regarding the predicate act of mail fraud. (*See* Def. Mem. at 4-5). However, the complaint also alleges that defendants committed the predicate acts of: (i) theft of trade secrets, on more than one (1) occasion, with the objective of converting such trade secrets "to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will injure any owner of that trade secret," 18 U.S.C. § 1832(a); and (ii) wire fraud in furtherance of a purported scheme to defraud. Even assuming, *arguendo*, that the complaint fails to plead a plausible claim of mail fraud, since, *inter alia*, (i) the complaint alleges two (2) or more predicate acts which defendants do not challenge as legally insufficient, *see Reich*, 858 F. 3d at 59 ("RICO only requires a combination of two or more predicate acts"), including two or more theft of trade secrets violations from which it allegedly suffered injury[3]; (ii) those predicate acts appear plausibly related by a common purpose; and (iii) defendants do not challenge the sufficiency of the

---

[3] Although "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it[,]" *Reich*, 858 F.3d at 59 (quoting *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014)), a pattern may be established on the basis of the "two or more" alleged theft of trade secret violations alone, which defendants do not challenge as legally insufficient. *See generally Id.* (holding that a plaintiff "can mix-and-match predicate acts in an attempt to identify a pattern of racketeering activity that has both 'continuity' and 'relatedness.'")

complaint with respect to the continuity element, the complaint plausibly alleges a "pattern of racketeering activity" within the meaning of the civil RICO statute.

                  b.  Enterprise

      The statute defines the term "enterprise" to "include[] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "This enumeration of included enterprises is obviously broad . . . [and] reaches a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 944, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009) (quotations and citation omitted). With respect to the individual defendants, the complaint's allegations, *inter alia*, of "an illegal purpose, a relationship among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose," are sufficient to state a RICO enterprise. *Martin Hilti Family Trust v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 475 (S.D.N.Y. 2015) (quotations, alterations and citation omitted); *see generally Boyle*, 556 U.S. at 946, 129 S. Ct. 2237 ("[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.")

      Moreover, "there is no requirement under section 1962(a) (as opposed to section 1962(c) that the 'person' be distinct from the 'enterprise.'" *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 345 (2d Cir. 1994), *abrogated on other grounds by Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 159, 121 S. Ct. 2087, 2088, 150 L.Ed.2d 198 (2001); *see also Official Publ'ns, Inc. v. Kable News Co.*, 884 F.2d 664, 668 (2d Cir. 1989)

("[U]nder § 1962(a), it may be possible for a defendant to also be the enterprise.") Accordingly, the complaint plausibly alleges the existence of an enterprise within the meaning of 18 U.S.C. § 1962(a).[4]

           2.     Injury

"After there have been sufficient predicate acts to constitute . . . a pattern [of racketeering activity], what is forbidden by subsection (a) is the investment or use of the proceeds of that activity to establish or operate a commerce-affecting enterprise." *Ideal Steel*, 652 F.3d at 321; *see also Ouaknine v. MacFarlane*, 897 F.2d 75, 82 (2d Cir. 1990) ("[A] violation of § 1962(a) consists of investing income derived from a pattern of racketeering activity to acquire an interest in, establish, or operate an enterprise; the violation is not established by mere participation in predicate acts of racketeering.") "Thus, the plaintiff asserting a civil RICO claim based on a violation of subsection (a) must show injury caused not by the pattern of racketeering activity itself, but rather by the use or investment of the proceeds of that activity[.]" *Ideal Steel*, 652 F.3d at 32; *Ouaknine*, 897 F.2d at 82-83 ("[A] plaintiff must allege injury from the defendant's investment of the racketeering income [in an enterprise] to recover under § 1962(a).")

In *Ideal Steel*, the Second Circuit explained that

> "the numerous disjuncts in § 1962(a) create a broad prohibition. Assuming a pattern of racketeering activity and a commerce-affecting enterprise, both the funds derived 'directly or indirectly' from such activity and the 'proceeds of such income' are tainted: no part of the 'income, or the proceeds of such income' may lawfully be 'use[d] or invest [ed],' whether 'directly or indirectly,' in 'the establishment or operation' of that enterprise. Thus, although the injury alleged to result from the violation of subsection (a)—as from the violation of any other subsection of § 1962—must be sufficiently directly related to the violation to meet the legal standard of proximate cause implied in § 1964(c), the many disjuncts in § 1962(a) mean that any of dozens of combinations or permutations will constitute a violation of that section."

---

[4] Defendants do not challenge the "commerce-affecting" element of plaintiff's civil RICO claim.

*Ideal Steel*, 652 F.3d at 322 (brackets in original). For RICO purposes, both "income fraudulently acquired and income fraudulently retained," including "moneys unlawfully saved or withheld by means of a pattern of mail and wire frauds," fall within the meaning of Section 1962(a). *Id.*

Moreover, since "RICO is to be read broadly," *Ideal Steel*, 652 F.3d at 322 (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)), the Second Circuit rejected the defendants' theory in *Ideal Steel* "that § 1962(a)'s prohibition against the use or investment of racketeering activity proceeds . . . does not apply when such proceeds are simply used or reinvested in the same entity that engaged in the racketeering activity." *Ideal Steel*, 652 F.3d at 322. Moreover, the Court found that the defendants' theory was "flawed" because "they did not merely reinvest in the same entity." *Id.* Similarly, the individual defendants in this case purportedly used or invested the racketeering income they acquired or retained from the alleged predicate acts of mail fraud, wire fraud and/or theft of trade secrets to establish and operate a new company, SIPS, to compete with plaintiff's business. Thus, like *Ideal Steel*, "[w]ith respect to the claim under § 1962(a), the proper referent in the proximate-cause analysis is [the individual] defendants' 'use or invest[ment]' of the funds, derived directly or indirectly from the alleged pattern of racketeering activity, to establish or operate . . . [SIPS]." *Id.* at 323 (third brackets in original).

Plaintiff's allegations indicating, *inter alia*, in essence, that the individual defendants misappropriated its trade secrets and committed mail and wire fraud; and used or invested racketeering income derived therefrom, including funds unlawfully acquired and saved by such predicate acts, to establish and operate a competing business, thereby interfering with plaintiff's rights under the 2016 MOU, *e.g.*, by acquiring municipal contracts to which plaintiff was entitled

as the exclusive supplier and subcontractor of USCI thereunder; and causing injury to plaintiff's business, are sufficient at the pleadings stage to state a plausible civil RICO claim under 18 U.S.C. § 1962(a). *See, e.g. Ideal Steel*, 652 F.3d at 324 (finding that the complaint's allegations that the defendants substantially decreased the plaintiff's sales, profits, and local market share, and eliminated the plaintiff's dominant market position, "by using racketeering proceeds to acquire, establish, and operate their Bronx business operation," were sufficient to state a plausible claim for relief under 18 U.S.C. § 1962(a)). Accordingly, the branch of defendants' motion seeking to dismiss plaintiff's civil RICO claim (second cause of action) is denied in its entirety.

C.    Breach of Fiduciary Duty Claim

With respect to its breach of fiduciary claim, plaintiff alleges, *inter alia*, (i) that defendants "had relationships with Plaintiff of trust and confidence and/or otherwise giving rise to fiduciary duties[,] . . . [and] owed Plaintiff duties of good faith, loyalty and candor," (Compl., ¶¶ 87-88); (ii) that defendants "breached their fiduciary duties to Plaintiff by, among other things: misappropriating [its] business opportunities, property, and trade secrets; failing to disclose conflicting business relationships and/or the establishment of a competing company; and making materially false statements to the detriment of Plaintiff, including but not limited to . . . that [they] had acquired Belco's business and Belco no longer operated as a separate entity," (*id.*, ¶ 89); and (iii) that plaintiff suffered damages as a result thereof. (*Id.*, ¶ 90).

"To state a breach of fiduciary duty claim under New York law, a plaintiff must plead: '(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom.'" *Spinelli v. Nat'l Football League*, 903 F.3d 185, 207 (2d Cir. 2018)

(quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011)). Defendants

challenge only the first element, claiming that the allegations in the complaint "do not give rise

to any fiduciary duty." (Def. Mem. at 7).

"A fiduciary relationship exists between two persons when one of them is under a duty to

act for or to give advice for the benefit of another upon matters within the scope of the relation."

*Marmelstein v. Kehillat New Hempstead: The Rav Aron Jofen Cmty. Synagogue*, 11 N.Y.3d 15,

21, 862 N.Y.S.2d 311, 892 N.E.2d 375 (N.Y. 2008) (quotations and citation omitted); *accord*

*Spinelli*, 903 F.3d at 207. "Broadly stated, a fiduciary relationship is one founded upon trust or

confidence reposed by one person in the integrity and fidelity of another. It is said that the

relationship exists in all cases in which influence has been acquired and abused, in which

confidence has been reposed and betrayed." *Galvstar Holdings, LLC v. Harvard Steel Sales,*

*LLC*, 722 F. App'x 12, 15 (2d Cir. Jan. 16, 2018) (summary order) (quoting *Penato v. George*,

52 A.D.2d 939, 383 N.Y.S.2d 900, 904 (N.Y. App. Div. 1976)); *see also Roni LLC v. Arfa*, 18

N.Y.3d 846, 848, 939 N.Y.S.2d 746, 963 N.E.2d 123 (N.Y. 2011) ("[A] fiduciary relation exists

when confidence is reposed on one side and there is resulting superiority and influence on the

other.") "Essential elements of a fiduciary relation are reliance, de facto control and dominance."

*U.S. v. Halloran*, 821 F.3d 321, 338 (2d Cir. 2016) (quoting *AG Capital Funding Partners, L.P.*

*v. State St. Bank & Trust Co.*, 11 N.Y.3d 146, 158, 866 N.Y.S.2d 578, 896 N.E.2d 61 (2008));

*see also Marmelstein*, 11 N.Y.3d at 21, 862 N.Y.S.2d 311 ("[T]wo essential elements of a

fiduciary relation are [] de facto control and dominance." (quotations, alterations and citation

omitted)).

"[A]bsent an allegation of a special relationship, mere assertions of 'trust and confidence'

are insufficient to support a claim of a fiduciary relationship." *Galvstar*, 722 F. App'x at 15.

Nonetheless, whether a fiduciary relationship exists "is 'necessarily [a] fact specific' inquiry, . . . which is typically unsuited for a motion to dismiss." *Brown Media Corp. v. K&L Gates, LLP*, 586 B.R. 508, 524 (E.D.N.Y. 2018) (brackets in original) (quoting *Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 593, 950 N.Y.S.2d 325, 973 N.E.2d 735 (N.Y. 2012)); *see also Neogenix Oncology, Inc. v. Gordon*, 133 F. Supp. 3d 539, 554 (E.D.N.Y 2015) ("Determining the existence of a fiduciary relationship requires a fact-specific inquiry. . . . As a result, a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)." (quotations, alterations and citations omitted)).

Moreover, under New York law, "[a]n employee owes a duty of good faith and loyalty to an employer in the performance of the employee's duties." *Island Sports Physical Therapy v. Burns*, 84 A.D.3d 878, 923 N.Y.S.2d 156 (N.Y. App. Div. 2011) (quotations and citation omitted); *accord Cerciello v. Admiral Ins. Brokerage Corp.*, 90 A.D.3d 967, 968, 936 N.Y.S.2d 224 (N.Y. App. Div. 2011); *Apple Mortg. Corp. v. Barenblatt*, 162 F. Supp. 3d 270, 283 (S.D.N.Y. 2016). Generally, "[a]n employee may create a competing business prior to leaving her or his employer without breaching any fiduciary duty unless she or he makes improper use of the employer's time, facilities or proprietary secrets in doing so[;] . . . [and] may solicit an employer's customers only when the employment relationship has been terminated." *Island Sports*, 84 A.D.3d at 878, 923 N.Y.S.2d 156 (quotations, alterations and citations omitted); *see also Cerciello*, 90 A.D.3d at 968 ("[T]he employee's misuse of the employer's resources to compete with the employer is generally required" to state a cause of action for breach of fiduciary duty). "[S]olicitation of an entity's customers by a former employee or independent contractor is not actionable unless the customer list could be considered a trade secret, or there was wrongful conduct by the employee or independent contractor, such as physically taking or

copying files or using confidential information." *Island Sports*, 84 A.D.3d at 878, 923 N.Y.S.2d 156; *accord Apple Mortg.*, 162 F. Supp. 3d at 283.

Plaintiff's allegations, *inter alia*, that the individual defendants, while in the employ of plaintiff and/or holding themselves out to be plaintiff's successor in interest under the 2016 MOU, misappropriated plaintiff's equipment, tools and purported trade secrets and/or confidential and proprietary information to form a competing entity and/or divert business opportunities to themselves, are sufficient, at the pleadings stage, to state a plausible claim for breach of fiduciary duty under New York law. *See, e.g. ExpertConnect, LLC v Fowler*, No. 18-cv-4828, 2019 WL 3004161, at * 7 (S.D.N.Y. July 10, 2019) (finding that the plaintiff's allegations that the defendants formed a competing company; used the plaintiff's "equipment to prepare and/or store corporate filings" for the new company; and "downloaded a wide range of trade secrets from [the plaintiff's] database without authorization, which they later used to solicit [the plaintiff's] clients," were sufficient to state a claim for breach of fiduciary duty); *Apple Mortg.*, 162 F. Supp.3d at 283 (finding that evidence indicating that the defendants "copied files and sent files and contact information externally from their [work] computers to personal email addresses and associated third parties, and . . . did so while still employed [with the plaintiff;] . . . [and] that there was at least some confidential information in the materials they copied from [the plaintiff's] database," precluded dismissal). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's breach of fiduciary claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied.

IV.     Conclusion

For the reasons set forth above, defendants' motion to dismiss plaintiff's civil RICO and

breach of fiduciary duty claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

is denied in its entirety.

SO ORDERED.

_/s/ Sandra J. Feuerstein_
Sandra J. Feuerstein
United States District Judge

Dated:  September 18, 2019
        Central Islip, New York