```
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
KELCO CONSTRUCTION, INC., d/b/a, BELCO    )
PIPE RESTORATION,                          )       Docket No. 2:18-cv-05925-SJF-SIL
                                           )
           Plaintiff,                      )
                                           )       AMENDED ANSWER AND
v.                                         )       COUNTERCLAIM
                                           )
SPRAY IN PLACE SOLUTIONS, LLC,             )
                                           )
           Defendant and                   )
           Counterclaim Plaintiff,         )
                                           )
                                           )
v.                                         )
                                           )
KELCO CONSTRUCTION, INC., b/d/a BELCO      )
PIPE RESTORATION, and JOHN KELLEY,         )
                                           )
           Counterclaim Defendants.        )
---------------------------------------------------------------x
STEVEN REBIEI,                             )
                                           )
           Third-party Plaintiff,          )
                                           )
v. .                                       )
                                           )
KELCO CONSTRUCTION, INC., b/d/a BELCO      )
PIPE RESTORATION, and JOHN KELLEY,         )
                                           )
           Third-party Defendants.         )
---------------------------------------------------------------x
```

Defendants, Spray in Place Solutions, LLC, Jeffrey Sausele, David Barnett, and DTBRGK Consulting LLC Corp., (hereinafter "answering defendants"), by and through their attorneys, Bennett, Bricklin & Saltzburg LLC, hereby state as follows:

## **INTRODUCTION**

1.  Neither admitted nor denied. Plaintiff's Complaint speaks for itself.

2.  Admitted that defendants are plaintiff's former project manager and director of

1

business development. The remaining allegations of this paragraph are denied.

## JURISDICTION

3. Denied as a legal conclusion.

4. Denied as a legal conclusion.

## PARTIES

5. After reasonable investigation, answering defendant is without sufficient knowledge to admit or deny the allegations of this paragraph. Strict proof thereof is demanded at trial.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

## FACTS COMMON TO ALL CAUSES OF ACTION

10. Denied.

11. Neither admitted or denied. The spray in place restoration process speaks for itself and proof thereof is demanded at trial.

12. Admitted.

13. Denied.

14. Denied.

15. Admitted.

16. Denied.

17. Admitted that Belco began negotiating a transaction with USCI in or around 2016. The remaining allegations of this paragraph is denied.

18. Admitted

19. Denied.

20. Neither admitted nor denied as the Memorandum of Understanding is not attached as an exhibit to plaintiff's complaint.

21. Neither admitted nor denied as the Memorandum of Understanding is not attached as an exhibit to plaintiff's complaint.

22. Admitted.

23. Admitted.

24. Denied.

25. Denied.

26. Admitted.

27. Denied.

28. Denied.

29. Denied.

30. Admitted.

31. Admitted in part, denied in part. Admitted that all tools and equipment belonging to plaintiff mistakenly placed in storage were returned. Denied that defendants misappropriated tools and equipment belonging to plaintiff.

32. Admitted.

33. Denied.

34. Admitted that a contract with Fort Lupton, Colorado was obtained in July 2017. The remaining allegations of this paragraph are denied.

35. Denied.

36. Denied.

37. Admitted that a contract with Wyandotte, Michigan was negotiated in 2017. The remaining allegations of this paragraph are denied.

38. Admitted that a contract with Wyandotte, Michigan was approved in 2018.

39. Denied.

40. Denied.

41. Denied.

42. Denied.

43. Denied.

44. Denied.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49. Denied.

50. Denied.

51. After reasonable investigation, answering defendant is without sufficient knowledge to admit or deny the allegations of this paragraph. Strict proof thereof is demanded at trial.

## **COUNT I**

52. Answering defendants incorporate their responses to the preceding paragraphs as though set forth more fully at length herein.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. Denied.

58. Denied.

## COUNT II

59. Answering defendants incorporate their responses to the preceding paragraphs as though set forth more fully at length herein.

60. Denied as a legal conclusion.

61. Denied.

62. Denied.

63. Denied.

64. Denied.

65. Denied.

66. Denied.

67. Denied.

68. Denied.

## COUNT III

69. Answering defendants incorporate their responses to the preceding paragraphs as though set forth more fully at length herein.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

75. Denied.

## COUNT IV

76. Answering defendants incorporate their responses to the preceding paragraphs as though set forth more fully at length herein.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

## COUNT V

81. Answering defendants incorporate their responses to the preceding paragraphs as though set forth more fully at length herein.

82. Denied.

83. Denied.

84. Denied.

85. Denied.

## COUNT VI

86. Answering defendants incorporate their responses to the preceding paragraphs as though set forth more fully at length herein.

87. Denied as a legal conclusion.

88. Denied as a legal conclusion.

89. Denied.

90. Denied.

## COUNT VII

91. Answering defendants incorporate their responses to the preceding paragraphs as though set forth more fully at length herein.

92. Denied.

93. Denied.

94. Denied.

95. Denied.

96. Denied.

97. Denied.

98. Denied.

## COUNT VIII

99. Answering defendants incorporate their responses to the preceding paragraphs as though set forth more fully at length herein.

100. Denied as a legal conclusion.

101. Neither admitted nor denied as the Memorandum of Understanding is not attached as an exhibit to plaintiff's complaint.

102. Denied.

103. Denied.

## COUNT IX

104. Answering defendants incorporate their responses to the preceding paragraphs as though set forth more fully at length herein.

105. After reasonable investigation, answering defendant is without sufficient

knowledge to admit or deny the allegations of this paragraph. Strict proof thereof is demanded at trial.

106. Denied.

107. After reasonable investigation, answering defendant is without sufficient knowledge to admit or deny the allegations of this paragraph. Strict proof thereof is demanded at trial.

108. Denied.

109. Denied.

## COUNT X

110. Answering defendants incorporate their responses to the preceding paragraphs as though set forth more fully at length herein.

111. Denied.

112. Denied.

113. Denied.

114. Denied.

115. Denied.

## AFFIRMATIVE DEFENSES

1. The alleged injuries were not the proximate result of the acts or omissions of answering defendants.

2. The negligence, if any, was the result of the acts or omissions of persons other than answering defendants and not under their control.

3. Answering defendants discharged each and every obligation which they owed to the plaintiff and otherwise answering defendants owed no duty.

4. The complaint fails to state a cause of action upon which relief can be granted.

5. The plaintiff is barred from recovery by the applicable statute of limitations.

6. Answering defendants are not liable due to the fact that the alleged damages were the result of superseding and/or intervening acts of others over whom answering defendants had no control.

7. Any injuries or damages were the result of the acts of third parties over whom answering defendants had neither control nor the duty to control or warn.

8. The plaintiff is barred from recovery by the conduct of the plaintiff.

9. The plaintiff has unclean hands.

## THIRD-PARTY CLAIMS OF STEVEN REBIEI
## and
## COUNTERCLAIM OF SPRAY IN PLACE SOLUTIONS, LLC

1. Effective April 1, 2017, Belco and Spray In Place Solutions ("SIPS") entered into an independent contractors agreement (the "Agreement") that Belco subsequently breached, causing substantial damage to SIPS.

2. The Agreement provided the following, in relevant part:

WHEREAS, Belco is in the business of providing pipeline restoration services primarily focused in New York State, and SIPS is in the business of providing pipeline restoration services as well as providing marketing services related to securing pipeline restoration work, the parties agree to the following terms and conditions:

1. RELATIONSHIP.

a. SIPS shall refer pipeline restoration and other general construction services work to Belco in the Territory, as defined herein. For all referred work. Belco shall be considered a sub-contractor to SIPS.

b. All communications and negotiations with end clients shall be the sole responsibility of SIPS or its assigns and Belco shall only direct any and all communications through SIPS.

c. Should Belco be assigned the work directly by marketing services provided by SIPS, SIPS shall receive a sales commission of 8.0% of gross profits derived from the referred work.

d. It shall be the responsibility of SIPS or its assigns to collect and distribute payments made for work completed pursuant to this Agreement. All payments between Belco and SIPS shall be paid with 10 days of receipt.

A copy of the Agreement is attached as Exhibit A.

3. As set forth in the Agreement, while both Belco and SIPS were in the pipeline restoration business, SIPS also had a specialty in marketing and business development that Belco did not have.

4. Whereas SIPS's business development interests were nationwide and, indeed, world-wide, Belco had an interest only in providing pipeline restoration services on projects in the New York, New Jersey, and Connecticut area.

5. Thus, the Agreement defined the "Territory" as follows:

TERRITORY.

a. Within the State of New York, SIPS will be OBLIGATED to give Belco the right of first refusal for any pipeline restoration work it procures, subject to Belco's reasonable pricing, which is defined as within 25% of any other bids sourced by SIPS.

b. Within the State of New Jersey and Connecticut, Belco will have the right to provide SIPS with the last bid for any sub-contracting work SIPS requires, and SIPS agrees to provide a transparent bid process to Belco in any sub-contractor selection process, including SIPS or its affiliates own work efforts around any work project.

6. Accordingly, the Agreement provided that, for any work SIPS developed in New York only, Belco would have the right to participate in the work provided that its pricing was within 25% of any other bids by any other pipeline restoration contractors from whom SIPS received bids.

7. With respect to any work SIPS developed in New Jersey or Connecticut, Belco

would have the right to place the last bid on such projects for pipeline restoration subcontracting work that SIPS might require on the project.

8. The Agreement provided that Belco would be a sub-contractor of SIPS on any project that SIPS developed under the Agreement, that Belco would be precluded from direct contact with any of the clients on the projects SIPS developed under the Agreement, and that SIPS would be entitled to a commission of 8% of all gross profits on any work SIPS developed under the Agreement.

9. The Agreement also provided that, in the event of a dispute between the parties under its terms, the prevailing party would be entitled to recover from the other party all legal fees and costs incurred in resolving the dispute.

10. Among the clients that SIPS introduced to Belco was a company called Suez.

11. Suez is a multi-national corporation with extensive business interests in North America. Suez is in the business of, among other things, water, energy, and waste-water management.

12. Suez does significant business in water and waste-water management for municipalities throughout the United States.

13. SIPS spent $600,000 developing its relationship with Suez. At the time SIPS introduced Suez to Belco, for potential work on Suez projects in New York, New Jersey, and Connecticut, SIPS had approximately $100 million worth of pipeline restoration and other work in development nationwide with Suez.

14. Another client that SIPS introduced to Belco under the Agreement was the Smithsonian Museum in Manhattan. SIPS was a subcontractor to a mechanical contractor on a construction project at the Smithsonian.

15. The Smithsonian project was budgeted for $357,000 for the work Belco would perform.

16. While the Smithsonian project was in progress, John Kelley, the principal of Belco, approached Defendant David Barnett, a principal of SIPS, to demand that SIPS reduce the commission Belco was contractually obligated to pay to SIPS under the Agreement.

17. Defendant Barnett declined.

18. Thereafter, Belco and Kelley surreptitiously contacted Smithsonian directly, in violation of paragraph 1.b. of the Agreement, cut SIPS out of the Smithsonian project, and refused to pay SIPS the commission it had earned on the project.

19. In further violation of paragraph 1.b of the Agreement, Belco surreptitiously initiated direct communications with SIPS's contacts at Suez.

20. Further, Belco interfered with SIPS's relationship with Suez by threatening to sue Suez unless Suez ceased doing business with Belco.

21. While the parties were conducting business under the Agreement, Suez was separately negotiating with the principals of SIPS and several investors in a transaction in which Suez would purchase SIPS.

22. The interference by Kelley and Belco in SIPS's business relationship with Suez resulted in Suez breaking off the negotiations over the sale of SIPS to Suez.

## COUNT I
(For Breach of Contract)

23. Counterclaim Plaintiff repeats the foregoing allegations as if fully set forth here.

24. For all of the foregoing reasons, Belco has breached the Agreement to the substantial damage and detriment of the Counterclaim Plaintiff.

WHEREFORE, Counterclaim Plaintiff demands entry of judgment as follows:

a. For compensatory damages in an amount to be determined at trial, but in no event for less than $25 million;

b. For prejudgment interest;

c. For costs and attorneys' fees in accordance with the paragraph 9 of the Agreement; and

d. For such other and further relief as the Court deems just and proper.

## COUNT II
(For Tortious Interference with Contract)

25. Counterclaim Plaintiff repeats the foregoing allegations as if fully set forth here.

26. For all of the foregoing reasons, Belco and Kelley tortiously interfered with SIPS's contract with Smithsonian to the substantial damage and detriment of the Counterclaim Plaintiffs.

WHEREFORE, Counterclaim Plaintiff demands entry of judgment as follows:

a. For compensatory damages in an amount to be determined at trial, but in no event for less than $25 million;

b. For prejudgment interest; and

d. For such other and further relief as the Court deems just and proper.

## COUNT III
(For Tortious Interference with Prospective Business Relations)

27. Third-party Plaintiffs and Counterclaim Plaintiff repeat the foregoing allegations as if fully set forth here.

28. For all of the forgoing reasons, Belco and Kelley tortiously interfered with SIPS's prospective business relationship with Suez, to the substantial damage and detriment of the Counterclaim Plaintiffs and the Third-party Plaintiffs.

WHEREFORE, Third-party Plaintiffs and Counterclaim Plaintiff demand entry of judgment as follows:

a. For compensatory damages in an amount to be determined at trial, but in no event for less than $25 million;

b. For prejudgment interest;

c. For costs and attorneys' fees in accordance with paragraph 9 of the Agreement; and

d. For such other and further relief as the Court deems just and proper.

Dated: Scotch Plains, NJ  
September 10, 2020

**Bramnick, Rodriguez, Grabas, Arnold & Mangan**  
Attorneys for Counterclaim Plaintiff Spray In Place Solutions, LLC, and Third-party Plaintiff Steven Rebiei

By: */S/ Carl A. Salisbury*  
Carl A. Salisbury (NY Bar No. 2427789)