UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
Kelco Construction, Inc. d/b/a Belco Pipe Restoration,

                            Plaintiff,

      -against-

Spray in Place Solutions, LLC; Jeffrey Sausele, David Barnett; DTB RGK Consulting, LLC Corp.; and Lance Secrest,

                        Defendants.
-------------------------------------------------------------------X
Spray in Place Solutions, LLC,

                        Counterclaim Plaintiff,

      -against-

Kelco Construction, Inc. d/b/a Belco Pipe Restoration; and John Kelley,

                        Counterclaim Defendants.
-------------------------------------------------------------------X
Steven Rebiei,

                        Third-Party Plaintiff,

      -against-

Kelco Construction, Inc. d/b/a Belco Pipe Restoration; and John Kelley,

                        Third-Party Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**
18-CV-05925 (DG) (SIL)

DIANE GUJARATI, United States District Judge:

       Plaintiff Kelco Construction, Inc., doing business as Belco Pipe Restoration ("Belco"), commenced this action on October 23, 2018 against Defendants Spray in Place Solutions, LLC

1

("SIPS"), Jeffrey Sausele, David Barnett, and DTB RGK Consulting, LLC Corp. ("DTB"), alleging unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, including §§ 1117 and 1125; violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(a); and common law unfair competition, misappropriation of trade secrets, conversion, breach of fiduciary duty, defamation, tortious interference with contract, tortious interference with business relations, and tortious interference with prospective economic advantage. *See* Complaint ("Compl.") ¶¶ 52-115, ECF No. 1. Belco subsequently amended its complaint to include Lance Secrest as an additional defendant. *See* Amended Complaint ("Am. Compl."), ECF No. 45.[1]

On September 30, 2020, in response to the amended complaint, Defendants and Third-Party Plaintiff Steven Rebiei, a principal of and investor in SIPS, *see* Transcript of March 11, 2021 Oral Argument ("Tr.") at 24, ECF No. 68, filed an amended answer/third-party complaint in which SIPS asserted for the first time three counterclaims, one against Belco alone and two against Belco and newly added Counterclaim/Third-Party Defendant John Kelley, a principal of Belco. Answer to Amended Complaint and Third Party Complaint ("Am. Answer"), ECF No. 50 ¶¶ 23-28. Rebiei joined in one of the latter claims as a third-party plaintiff. *Id.* ¶¶ 27-28.

Now before the Court is Belco's motion to strike SIPS's counterclaims and Rebiei's third-party claim, Motion to Strike ("Belco's Mot."), ECF No. 60; Memorandum of Law in Support of Motion to Strike ("Belco's Br."), ECF No. 60-2; Memorandum of Law in Further Support of Motion to Strike and in Opposition to Cross-Motion to Amend ("Belco's Reply"),

---

[1] The Court uses the term "Defendants" herein when referring collectively to SIPS, Sausele, Barnett, DTB, and Secrest.

2

ECF No. 64-1,[2] and Defendants and Rebiei's cross-motion to amend, in which Defendants and Rebiei seek retroactive leave to amend their answer/third-party complaint to include SIPS's and Rebiei's counterclaims and third-party claim, Cross-Motion to Amend ("Defs.' Cross-Mot."), ECF No. 62; Brief in Opposition to Motion to Strike and in Support of Cross-Motion to Amend ("Defs.' Br."), ECF No. 62-1.  The Court heard oral argument on both motions on March 11, 2021.  ECF No. 66.

For the reasons set forth below, the Court grants Defendants and Rebiei's cross-motion to amend, *sua sponte* grants Defendants and Rebiei further leave to amend their answer/third-party complaint in the limited ways described below, and denies as moot Belco's motion to strike.

## BACKGROUND

### I.     Relevant Allegations

Belco provides "spray in place pipe restorations services," a process used "to clean and add a protective coating to piping."  Am. Compl. ¶ 11.

Belco filed its original complaint on October 23, 2018, much of which concerned a Memorandum of Understanding between Belco and Utility Service Co., Inc. ("USCI"), by which "USCI would become the exclusive entity through which Belco would bid for and negotiate municipal contracts for pipe restoration throughout the United States . . . and Belco would become USCI's exclusive supplier and/or subcontractor for spray in place pipe restoration" (the "2016 MOU").  Compl. ¶¶ 17, 20.  Although the original complaint referred to the 2016 MOU primarily as an agreement between Belco and USCI, *see, e.g.*, *id.* ¶ 20, the complaint also

---

[2]   Although the docket reflects that ECF Nos. 60, 60-2, and 64-1 were filed on behalf of both Belco and Kelley, the documents themselves indicate that Belco is the only moving party, ECF No. 60 at 1; ECF No. 60-2 at 1; ECF No. 64 at 1-2.  For purposes of deciding the instant motions, it is not necessary for the Court to resolve this ambiguity.

3

described the agreement as one resulting from negotiations among Belco, USCI, *and* USCI's "affiliated 'SUEZ' group of companies," *id.* ¶ 17.  According to SIPS and Rebiei, the Suez group is a "multi-national corporation . . . [that] does significant business in water and waste-water management for municipalities throughout the United States." Am. Answer at 11.[3]

The original complaint alleged that Barnett and Sausele, who were employed by or otherwise associated with Belco at the time, Compl. ¶¶ 13-16, were involved in Belco's negotiations with USCI, *id.* ¶ 18.  The complaint further alleged that, after the 2016 MOU's execution, Barnett and Sausele terminated their relationships with Belco, *id.* ¶¶ 20-23, and started SIPS as a competing company, *id.* ¶¶ 2, 30.

According to the original complaint, Defendants "claimed to have acquired [Belco], misappropriated [Belco]'s tools, equipment, trade secrets, proprietary processes, client and supplier information, pricing information[,] website content, and marketing material -- in effect masquerading as [Belco] -- so as to reap the benefits of [Belco's] joint venture [with USCI] for themselves." *Id.* ¶ 2.  As a result, Defendants were able to acquire "at least two contracts, totaling $1,399,000 . . . by fraudulently claiming entitlement to [Belco]'s rights under the 2016 MOU with USCI." *Id.*

Based on these and other allegations, the original complaint listed ten causes of action: unfair competition, in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq*., including §§ 1117 and 1125; a violation of the RICO Act, 18 U.S.C. § 1962(a); and common law unfair competition, misappropriation of trade secrets, conversion, breach of fiduciary duty, defamation,

---

[3] Citations to the amended answer/third-party complaint reference page numbers rather than paragraph numbers due to the repetitive paragraph numbering used in the document.

4

tortious interference with contract, tortious interference with business relations, and tortious interference with prospective economic advantage. Compl. ¶¶ 52-115.

On September 4, 2020, Belco, with Defendants' consent, *see* ECF No. 45-2, filed an amended complaint which, *inter alia*, includes Secrest as an additional defendant, *see* Am. Compl. ¶ 2. Therein, Belco alleges that Secrest was a salesman working for Barnett and/or DTB who also obtained access to Belco's trade secrets and confidential and proprietary information. *Id.* ¶ 18. The amended complaint also contains new allegations that Defendants, by fraudulently using Belco's likeness and past work product as their own, obtained at least 18 contracts/subcontracts beyond the two contracts referenced in the original complaint. *See id.* ¶ 2. Beyond these allegations and the addition of Secrest, the amended complaint largely mirrors the original complaint. The amended complaint contains no new causes of action.

On September 30, 2020, Defendants and Rebiei responded to the amended complaint with an amended answer/third-party complaint, in which SIPS asserted three new counterclaims, one against just Belco and two against Belco and Kelley, with Kelley included as a newly added counterclaim/third-party defendant. *See* Am. Answer at 12-14. Rebiei, as a third-party plaintiff, joined in one of the claims against Belco and Kelley. *Id.* at 13.

The amended answer/third-party complaint largely concerns an "independent contractors agreement" between Belco and SIPS that took effect in April 2017 (the "2017 Agreement"). *Id.* at 9-10. The 2017 Agreement provided, among other things, "that Belco would be a sub-contractor of SIPS on any project that SIPS developed under the [2017] Agreement, that Belco would be precluded from direct contact with any of the clients on the projects SIPS developed under the [2017] Agreement, and that SIPS would be entitled to a commission of 8% of all gross profits on any work SIPS developed under the [2017] Agreement." *Id.* at 11.

SIPS's counterclaims and Rebiei's third-party claim concern a pair of clients that SIPS allegedly introduced to Belco: the Smithsonian Museum in Manhattan and Suez. *Id.* at 11-12. With respect to the Smithsonian, SIPS and Rebiei allege that "Kelley, [as] principal of Belco, approached . . . Barnett, a principal of SIPS, to demand that SIPS reduce the commission Belco was contractually obligated to pay SIPS under the [2017] Agreement." *Id.* at 12. SIPS and Rebiei allege that, after Barnett declined to do so, "Belco and Kelley surreptitiously contacted Smithsonian directly, in violation of [a provision] . . . of the [2017] Agreement, cut SIPS out of the Smithsonian project, and refused to pay SIPS the commission it had earned on the project." *Id.*

As for Suez, SIPS and Rebiei claim that Suez was "negotiating with the principals of SIPS and several investors in a transaction in which Suez would purchase SIPS." *Id.* They further allege that Belco "threaten[ed] to sue Suez unless Suez ceased doing business with [SIPS],"[4] resulting in "Suez breaking off negotiations over the [potential] sale of SIPS to Suez." Am. Answer at 12.

Relying on these allegations, the amended answer/third-party complaint lists three causes of action. SIPS brings a counterclaim against Belco for breach of contract, with respect to the 2017 Agreement. *Id.* at 12-13. SIPS brings a counterclaim against Belco and Kelley for tortious interference with contract, with respect to the Smithsonian project. *Id.* at 13. And SIPS and

---

[4] The amended answer/third-party complaint actually states that Belco "threaten[ed] to sue Suez unless Suez ceased doing business with *Belco*," *id.* (emphasis added), but this appears to have been a typographical error, especially in light of SIPS and Rebiei's later allegation that Belco "interfered with *SIPS's* prospective business relationship with Suez," *id.* at 13 (emphasis added). *Cf. Monge v. 405 Hotel LLC*, No. 19-CV-00451, 2021 WL 982866, at *8 & n.4 (E.D.N.Y. Feb. 24, 2021) (declining to decide a motion to dismiss on the basis of an "obvious typographical error"), *report and recommendation adopted*, 2021 WL 980870 (E.D.N.Y. Mar. 15, 2021).

6

Rebiei bring a counterclaim/third-party claim against Belco and Kelley for tortious interference with prospective business relations, with respect to SIPS's prospective business relationship with Suez. *Id.* at 13-14.

## II.  Procedural Background

On November 18, 2020, Belco moved for a pre-motion conference in anticipation of filing a motion to strike Defendants' counterclaims and Rebiei's third-party claim. ECF No. 56.[5] On December 4, 2020, Defendants filed a letter in response. ECF No. 57. On December 22, 2020, the Court held a pre-motion conference at which the Court set a briefing schedule for Belco's anticipated motion. *See* ECF No. 58.

In keeping with that schedule, Belco filed its motion to strike on January 5, 2021. Belco's Mot.; Belco's Br. On January 19, 2021, Defendants and Rebiei opposed Belco's motion, Defs.' Br., and Defendants and Rebiei filed a cross-motion seeking retroactive leave for SIPS and Rebiei to assert their counterclaims and third-party claim, Defs.' Cross-Mot. Belco filed a reply on January 29, 2021. Belco's Reply.

The Court heard oral argument on both motions on March 11, 2021. *See* ECF No. 66.

## III.  Discovery Status

As of March 11, 2021, the parties had deposed three of approximately 25 anticipated witnesses, Belco's Br. at 15 (citing ECF No. 43 at 2); Tr. at 11, and had exchanged some – but not nearly all – document discovery, *see* Tr. at 11 (counsel acknowledging that "[n]o paper discovery" has taken place with respect to the "Smithsonian project"); 21-22 (counsel acknowledging that Defendants have produced "in [their] initial document production about

---

[5]  Although it appears from the amended answer/third-party complaint that SIPS is the only one of the Defendants asserting counterclaims, Belco styled its motion for a pre-motion conference as one aimed at Defendants' (rather than just SIPS's) counterclaims. *See, e.g., id.* at 1.

7

17,000 pages of discovery" but noting that Defendants "have yet to receive" certain "paperwork from the plaintiffs"); *see id.* at 22 (Belco's counsel acknowledging Belco's intention to produce "many voluminous documents . . . within the next few days"). The parties, at least as of March 11, 2021, had agreed to defer discovery until the Court resolves the instant motions. *Id.* at 12.

## DISCUSSION

### I. Defendants and Rebiei Are Granted Leave to Amend

#### A. Applicable Law

Motions to amend are generally governed by Federal Rule of Civil Procedure 15(a) ("Rule 15(a)"), which provides, *inter alia*, that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In keeping with Rule 15(a), decisions in this District have explained that, "[u]nless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Adlife Mktg. & Commc'ns Co. v. Best Yet Mkt., Inc.*, No. 17-CV-02978, 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."). The decision whether to grant leave to amend "rests within the sound discretion of the district court." *Adlife Mktg. & Commc'ns Co.*, 2018 WL 4568801, at *1 (citing *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603-04 (2d Cir. 2005)).

A proposed amendment may be unduly prejudicial if new claims would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Id.* at *3 (quoting *Ross Prod. Div. Abbot Labs. Inc. v.*

8

*Saper*, No. 06-CV-03264, 2007 WL 1288125, at *2 (E.D.N.Y. Apr. 26, 2007)). "Mere delay [posed by a proposed amendment], . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (quoting *State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d. Cir. 1981)). "Nor can complaints of 'the time, effort and money . . . expended in litigating [the] matter,' without more, constitute prejudice sufficient to warrant denial of leave to amend." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (alterations in original) (quoting *Block*, 988 F.2d at 351).

In assessing a movant's delay in seeking to amend, courts must consider "not only the amount of time that passed before the movant sought to amend, but also the reasons for that delay and its practical impact on the other side's legitimate interests, including both that party's ability to respond to new claims or defenses and any other prejudice flowing from a delay in the final adjudication of the case." *Jean-Baptiste v. United States*, No. 10-CV-04094, 2012 WL 3137458, at *2 (E.D.N.Y. Aug. 1, 2012) (quoting *Sly Magazine, LLC v. Weider Publ'ns LLC*, 241 F.R.D. 527, 532 (S.D.N.Y. 2007)). "The concepts of delay and undue prejudice are interrelated – the longer the period of unexplained delay, the less will be required of the non-moving party in terms of a showing of prejudice." *Davidowitz v. Patridge*, No. 08-CV-06962, 2010 WL 1779279, at *2 (S.D.N.Y. Apr. 23, 2010) (citing *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)).

As to futility, a proposed amendment is futile when it "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681

9

F.3d 114, 119 (2d Cir. 2012)). To state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court must "accept all 'well-pleaded factual allegations' in the complaint as true." *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 679).

The party opposing amendment bears the burden of establishing that amendment would be prejudicial or futile. *Jipeng Du v. Wan Sang Chow*, No. 18-CV-01692, 2019 WL 3767536, at *4 (E.D.N.Y. Aug. 9, 2019) (citing *Eberle v. Town of Southampton*, 985 F. Supp. 2d 344, 347 (E.D.N.Y. 2013)).

**B.     Analysis**

Belco has failed to show that it will suffer undue prejudice if the Court permits SIPS and Rebiei to bring their counterclaims/third-party claim.

Defendants and Rebiei filed the amended answer/third-party complaint containing SIPS's and Rebiei's counterclaims/third-party claim on September 30, 2020, approximately two years after Belco filed its original complaint on October 23, 2018. Belco contends – and Defendants and Rebiei very nearly concede – that SIPS and Rebiei knew of the facts giving rise to their counterclaims/third-party claim prior to the complaint's filing. *See* Belco's Reply at 3-4; Tr. at 16 ("I believe that the defendants very likely knew of the facts that relate to the counterclaims."). Defendants and Rebiei advance a pair of reasons that, in their view, show that SIPS and Rebiei's nearly two-year delay was justified. *See* Defs.' Br. at 6. Belco, in turn, argues that neither of

10

those reasons excuses SIPS and Rebiei's delay and that, should SIPS and Rebiei now be granted leave to bring their counterclaims/third-party claim, this case will be yet further delayed as the parties conduct the additional discovery associated with those new claims. Belco's Reply at 3-4.

The Court need not resolve the parties' dispute over whether the nearly two-year delay was justified, however, because "[m]ere delay," without the threat of undue prejudice, does not warrant denying leave to amend. *See Block*, 988 F.2d at 350. Even if the Court were to accept that the proffered reasons do not justify SIPS and Rebiei's delay, Belco has not shown that the delay has or will subject it to undue prejudice. *See State Farm Mut. Auto. Ins. Co. v. Grafman*, No. 04-CV-02609, 2007 WL 7704666, at *3 (E.D.N.Y. May 22, 2007) (granting leave to amend after a delay of two-and-a-half years, in part because defendants failed to demonstrate "significant prejudice . . . as a result of the delay in light of the factual circumstances and procedural posture of the case").

Belco contends that it will suffer prejudice because SIPS's counterclaims and Rebiei's third-party claim will require additional discovery. Belco's Br. at 14-15. However, if permitted, the new claims will not so significantly expand discovery as to *unduly* prejudice Belco. Belco anticipates that, should the counterclaims/third-party claim proceed, Belco will need to request paper discovery in connection with the Smithsonian project and Suez's potential purchase of SIPS; depose three additional witnesses (one of whom is Rebiei); possibly re-depose Barnett and Secrest; and identify and depose the Suez representatives and "several investors" involved in the alleged negotiations between SIPS and Suez. Belco's Br. at 14-15. Although this anticipated additional discovery is not insignificant, it is significantly less than what already remains outstanding. The parties have conducted only limited discovery to date, having taken just three of approximately 25 anticipated depositions and having – as of the date of argument – engaged in

11

only some document discovery with apparently much more to come. And, at least as of the date of argument, the parties had agreed to defer discovery until the Court resolves the instant motions. Tr. at 12. The additional discovery associated with SIPS's counterclaims and Rebiei's third-party claim can be conducted largely in tandem with the discovery that remains outstanding in this case. On these facts, Belco has not met its burden of demonstrating undue prejudice. *See Munguia v. Bhuiyan*, No. 11-CV-03581, 2012 WL 526541, at *4 (E.D.N.Y. Feb. 16, 2012) (granting leave to amend in part because "it [was] clear that, given that little discovery ha[d] taken place, [defendants] would suffer [no prejudice]"); *Playwell Toy, Inc. v. Bureau Veritas Consumer Prod. Servs., Inc.*, No. 03-CV-00704, 2007 WL 2892031, at *11 (W.D.N.Y. Sept. 28, 2007) (granting leave to amend where the parties had conducted only "minimal discovery").

      Belco has similarly failed to show that granting Defendants and Rebiei leave to amend would prove futile. With respect to futility, Belco takes issue with SIPS and Rebiei's allegations that "[a]mong the clients that SIPS introduced to Belco was a company called Suez," and that Belco, "in . . . violation of . . . the [2017] Agreement, . . . surreptitiously initiated direct communications with SIPS's contacts at Suez." *See* Belco's Br. at 11 (citing Am. Answer at 11-12). Belco contends that these allegations are futile because: (1) SIPS was formed six months *after* Belco entered into the 2016 MOU with Suez, meaning that SIPS could not possibly have introduced Belco to Suez; and (2) regardless, Belco had a contractual right to directly negotiate with Suez that the 2017 Agreement did not supersede. *Id.* In response, Defendants and Rebiei argue: (1) that SIPS and Rebiei meant to allege that Defendants Barnett and Secrest, who later became the *principals* of SIPS, made the introduction; and (2) that the 2017 Agreement plainly

contradicts Belco's assertion that it retained a contractual right to negotiate with Suez after that agreement's creation. Defs.' Br. at 4-5.

The second issue – whether the 2017 Agreement barred Belco from communicating with Suez – presents the sort of factual dispute not ripe for resolution at this stage. SIPS and Rebiei allege that the 2017 Agreement barred Belco from "direct contact with any of the clients on the projects SIPS developed under the Agreement." Am. Answer at 11; *see also* ECF No. 60-11 (2017 Agreement) (stating that "[a]ll communications and negotiations with *end clients* shall be the sole responsibility of SIPS or its assigns and Belco shall only direct any and all communications through SIPS" (emphasis added)). Whether Suez qualifies as one such client under the 2017 Agreement presents a question of fact that the Court declines to resolve at this stage. *See Alston v. 1749-1753 First Ave. Garage Corp.*, No. 12-CV-02676, 2013 WL 3340484, at *5 (E.D.N.Y. July 2, 2013) ("While contract ambiguities can be resolved either at trial or on summary judgment since extrinsic evidence can be offered to resolve the ambiguity, . . . it is not proper to do so on a motion to dismiss." (citation omitted)); *Bank of New York Trust, N.A. v. Franklin Advisors, Inc.*, 522 F. Supp. 2d 632, 637 (S.D.N.Y. 2007) ("The Court's role on a 12(b)(6) motion to dismiss is not to resolve contract ambiguities."); *see also Lawton v. Success Acad. Charter Sch., Inc.*, 323 F. Supp. 3d 353, 365 (E.D.N.Y. 2018) (denying motion to dismiss where "plaintiffs raise[d] a factual dispute inappropriate for resolution on a Rule 12(b)(6) motion"); *cf. Trans-Pro Logistic, Inc. v. Coby Elecs. Corp.*, No. 05-CV-01759, 2008 WL 4163992, at *5 (E.D.N.Y. Sept. 3, 2008) (explaining that a trial was necessary to resolve "factual

disputes about the terms of [a] contract between plaintiff and defendant"). Accordingly, this dispute does not counsel against granting leave to amend.

More problematic is the amended answer/third-party complaint's supposedly mistaken reference to SIPS rather than its principals, as this alleged mistake produces allegations that are blatantly contradicted by documents on which the answer/third-party complaint relies. *See Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 140 (E.D.N.Y. 2015) (explaining that, at the motion to dismiss stage, "where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true" (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146-47 (2d Cir. 2011), *cert. denied*, 568 U.S. 1229 (2013))); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered [at the motion to dismiss stage]."). Defendants and Rebiei cannot cure these contradictions merely by asserting that SIPS and Rebiei meant to reference Barnett and Secrest instead of the entity that they later formed. The appropriate course, though, is not, as Belco suggests, to dismiss as futile SIPS's breach of contract counterclaim in its entirety, *see* Belco's Reply at 3, but, rather, to permit Defendants and Rebiei to amend their answer/third-party complaint to modify any mistaken references to SIPS. Although Defendants and Rebiei have not requested such an opportunity outright, the Court concludes that leave to amend is warranted with respect to this very limited issue. *See Cotiviti, Inc. v. Deagle*, No. 20-CV-02730, 2020 WL 6806434, at *13 (S.D.N.Y. Nov. 19, 2020) (explaining that *sua sponte* leave to amend is appropriate "when justice so requires" (quoting Fed. R. Civ. P. 15(a)(2))); *see, e.g., S. Illinois Laborers' & Emps. Health & Welfare Fund v.*

14

*Pfizer Inc.*, No. 08-CV-05175, 2009 WL 3151807, at *1 (S.D.N.Y. Sept. 30, 2009) (*sua sponte* granting leave to amend).

In sum, Belco has not shown that granting Defendants and Rebiei leave to amend would prove futile or subject Belco to undue prejudice.  Accordingly, the Court grants Defendants and Rebiei's cross-motion for leave to amend, such that Defendants and Rebiei are granted retroactive leave to amend their answer/third-party complaint to include SIPS's and Rebiei's counterclaims/third-party claim as they are currently alleged.  The Court further *sua sponte* grants Defendants and Rebiei prospective leave to amend for the limited purpose of correcting any mistaken references to SIPS, rather than its principals, and to correct the apparent typographical error in which the amended answer/third-party complaint seems to mistakenly refer to Belco, rather than SIPS, *see* Am. Answer at 12.

## II.   Belco's Motion to Strike Is Denied

In light of the foregoing, the Court denies as moot Belco's motion to strike without prejudice to Belco's and Kelley's rights to move to dismiss SIPS's counterclaims and Rebiei's third-party claim once the deadline for Defendants and Rebiei to amend in the limited way described above has passed.  *Cf. Armstrong v. Homebridge Mortg. Bankers Corp.*, No. 07-CV-01024, 2009 WL 3253945, at *1, 3 (E.D.N.Y. Sept. 30, 2009) (granting leave to amend and denying associated motion to dismiss as moot as a result); *Im v. Bayview Loan Servicing LLC*, No. 16-CV-00634, 2017 WL 11567878, at *2 (S.D.N.Y. Jan. 24, 2017) ("Thus, in light of the generous standard for granting leave to amend, . . . the Court grants [Plaintiff] leave to file the second amended complaint and denies Defendants' motion to dismiss without prejudice to renewal or filing a new motion to dismiss the second amended complaint." (citation omitted)).

## CONCLUSION

For the reasons set forth above, Defendants and Rebiei's Cross-Motion to Amend, ECF No. 62, is GRANTED; Defendants and Rebiei are granted further leave to amend their answer/third-party complaint for the limited purpose of correcting any mistaken references to SIPS, rather than its principals, and to correct the apparent typographical error in which the amended answer/third-party complaint seems to mistakenly refer to Belco, rather than SIPS; and Belco's Motion to Strike, ECF No. 60, is DENIED.

Defendants and Rebiei are directed to file a second amended answer/third-party complaint, which shall include any amendments to those allegations previously referencing SIPS by mistake, and to the allegation apparently referring by mistake to Belco, rather than SIPS, by May 11, 2021.  Belco and Kelley shall answer or otherwise respond to SIPS's counterclaims and Rebiei's third-party claim by June 2, 2021.

SO ORDERED.

                                                  */s/ Diane Gujarati*
                                                  DIANE GUJARATI
                                                  United States District Judge

Dated: April 27, 2021
       Brooklyn, New York